UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WENDY LEE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    C.A. 03-206 (TPJ) |
| | ) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
|     Defendant. | ) |

MEMORANDUM AND ORDER

Plaintiff Wendy Lee[1] is a former affiliate of defendant Central Intelligence Agency (CIA or "Agency") who has written an account of her experiences she wishes to publish. Lee filed this lawsuit seeking injunctive and declaratory relief against the CIA under the Administrative Procedure Act ("APA"), 5 U.S.C. §701 (2004), the CIA's internal regulations, and the First Amendment to the United States Constitution. Lee claims that the CIA has unlawfully imposed a prior restraint upon her speech by improperly declaring large portions of her memoir to be "classified" and unpublishable. Defendant contends that the classification decisions were proper and not violative of any law.

Following a number of hearings intended to determine how to proceed in this matter, this case is now before the Court on defendant's motion for summary judgment. While the classified memoir and unredacted versions of affidavits of the classifying agents have been filed with the Court, Lee has not filed an opposition to defendant's motion because her attorney has not been

---

[1] Wendy Lee is a pseudonym because plaintiff's affiliation itself with the CIA is classified. Plaintiff's real name has, accordingly, not been made part of the record.

granted access to the classified material. After careful review of the documents at issue, the Court finds that it can resolve the classification issue *ex parte*, without any further aid from plaintiff's counsel, and for the reasons hereinafter elucidated will grant defendant's motion for summary judgment.

## I.

Although the dates, and the very fact of her affiliation, are classified, Lee was for a period of time prior to the filing of this lawsuit affiliated with the CIA. Like all employees of the CIA, Lee was required to sign a secrecy agreement as a precondition of her affiliation with the Agency. The agreement states in relevant part:

> In consideration for being employed or otherwise retained to provide services to the Central Intelligence Agency, I hereby agree that I will never disclose in any form or any manner, to any person not authorized by the Central Intelligence Agency to receive it, any information or material...received or obtained in the course of any employment or other service with the Central Intelligence Agency that is marked as classified or that I know is classified...[or] that I know is in the process of a classification determination.

Secrecy Agreement, Def's. Ex. C at para. 3. Further sections of this agreement obligate plaintiff to submit any writings for classification review prior to their publication.

In June 2002, pursuant to the secrecy agreement, Lee submitted three chapters of her unpublished memoir to the CIA's Office of Prepublication Review ("OPR"). Shortly thereafter, Lee requested, by letter, that her cover status be changed so that she could reveal her affiliation with the CIA. On July 11, 2002, the OPR informed plaintiff that it would not approve the publication of any portion of her manuscript discussing her association with the CIA because her affiliation was, and remained, classified. Her request for a change in cover status was also

denied. Plaintiff asked OPR to reconsider its decision on her memoir based on evidence she submitted including manuscripts published by other CIA employees containing the same or similar information that were cleared for publication. On August 5, 2002, OPR reaffirmed its prior decision.

In her suit, Lee claims that the CIA violated her First Amendment rights by blocking the publication of her memoir without demonstrating a substantial government interest that would be harmed by the publication of her memoir, and by failing to produce reasonably specific explanations that demonstrate a logical connection between the information to be deleted and the reasons for classification. The CIA further violated her constitutional rights, Lee says, by denying her counsel access to the classified documents. Finally, Lee argues that the CIA's refusal to declassify her cover status is unreasonable, arbitrary and capricious, and a violation of the APA.[2]

## II.

Lee's second claim– that the CIA is violating her First Amendment rights by denying her attorney access to the classified materials– must be dealt with first as it raises, by implication, a fundamental procedural issue overshadowing this case. Lee's attorney, Mark S. Zaid, Esq., has not seen any of the classified materials filed by the government, nor has he been allowed to

---

[2] The Complaint also charges the CIA with acting arbitrarily and capriciously in its review of a screenplay plaintiff submitted to the OPR, and for which she claims she has not received a final answer as to the OPR's classification decision. The screenplay is never mentioned in the Record before the Court, and accordingly is not regarded as being properly before the Court at this time.

discuss the content of Lee's memoir with her.[3] In fact, the only classified information Zaid is privy to in this case is his client's real name, and the fact of her affiliation with the CIA. As a result, Zaid has not filed a written opposition to defendant's motion for summary judgment. Instead, he filed a memorandum suggesting ways in which the Court could proceed procedurally in this case in the absence of a formal submission from plaintiff.

Zaid suggests three ways in which the Court could proceed: The first option, and the approach most beneficial to Lee, would be for the Court to decide that its need for assistance in assessing the classified documents outweighs the government's interest in national security, and order the CIA to grant Zaid access to the documents, provided he first obtain the proper security clearances. The second option, according to Zaid, is to allow Lee to meet with the Court in private, and argue *ex parte* why she believes the contents of her memoir have been improperly classified. The third option is for the Court to conduct its own *in camera* review of the classified materials and rule without further aid from Lee or her counsel. This last approach Zaid likens to the procedures pursued in a Freedom of Information Act ("FOIA") case, and cautions that to follow this route may be to blur the distinction between (and to fail to recognize the greater magnitude of protection due) plaintiffs seeking to enforce their First Amendment rights to release information they already possess and FOIA plaintiffs who seek access to information they do not have. See McGehee v. Casey, 718 F.2d 1137, 1148 (D.C. Cir. 1983).

Plaintiff's suggestions notwithstanding, the issue of how to proceed in cases like the

---

[3]The government filed Lee's memoir, the documents she submitted to OPR which she says show the improper classification of her memoir, and the sworn, classified, affidavit of the classifying authority, William H. McNair, for *in camera* review.

instant one was examined and decided by the D.C. Circuit in <u>Stillman v. Central Intelligence Agency</u>, 319 F.3d 546 (D.C. Cir. 2003). In remanding a factually similar case to the district court the D.C. Circuit ordered that:

> [t]he District Court should first inspect the [classified] manuscript and consider any pleadings and declarations filed by the Government, as well as any materials filed by [plaintiff], who describes himself an expert in "classification and declassification." The court should then determine whether it can, consistent with the protection of [plaintiff's] first amendment rights to speak and to publish, and with the appropriate degree of deference owed to the Executive Branch concerning classification decisions, resolve the classification issue without the assistance of plaintiff's counsel. If not, then the court should consider whether its need for such assistance outweighs the concomitant intrusion upon the Government's interest in national security. Only then should it decide whether to enter an order granting [plaintiff's counsel] access to the manuscript and, if similarly necessary, to the Government's classified pleadings and affidavits.

<u>Stillman</u>, 319 F.3d 548-49. While Stillman himself may have been a classification expert, such expertise in a plaintiff is of no relevance. The hierarchy of alternatives is clear. In First Amendment challenges to classification decisions by the author of the classified material, courts of this circuit are to examine classified materials *in camera* and determine for themselves, if possible, whether the classification decisions were proper, before considering whether plaintiff's counsel need be granted access to classified materials. The Court has therefore examined the contested manuscript, as well as the government's classified affidavits, *in camera* and can, "consistent with the protection of [plaintiff's] first amendment rights to speak and to publish...resolve the classification issue without the assistance of plaintiff's counsel." <u>Id.</u> at 549.

As to Lee's claim that defendant violates her First Amendment rights by blocking her counsel's access to the classified materials, that claim is dependent on whether the materials were properly classified, the propriety of which the Court must first attempt to reach unaided by plaintiff or her counsel simply through *in camera* review of the classified materials themselves.

III.

CIA classification decisions are entitled to substantial deference. Courts are to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." Salisbury v. United States, 690 F.2d 966, 970 (D.C. Cir. 1982) (citation omitted). In reviewing CIA classification decisions a reviewing court should conduct a "*de novo* review of the classification decision, while giving deference to reasoned and detailed CIA explanations of that classification decision." McGehee, 718 F.2d at 1148. The "significance of one item of information may frequently depend upon knowledge of many other items of information. What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context. The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area." United States v. Marchetti, 466 F.2d 1309, 1318 (4th Cir. 1972). Accordingly, a reviewing court must walk a fine line between "defer[ring] to CIA judgment as to the harmful results of publication" and requiring that the "CIA in fact had good reason to classify, and therefore censor, the materials at issue." McGehee, 718 F.2d at 1148. This means a court "should require that CIA explanations justify censorship with reasonable specificity, demonstrating a logical connection between the deleted information and the reasons for classification." Id. at 1148.

The information contained in the memoir plaintiff seeks to publish is governed by Executive Order No. 12958, as amended by Exec. Order No. 13292, 68 Fed. Reg. 15315 (2003), which establishes a system for classifying and declassifying national security information. It sets out four requirements that information must meet before it may be properly classified. The

information must: (1) be classified by an original classification authority; (2) be information that is owned by, produced by, or for, or is under the control of the U.S. government; (3) fall within one or more of the categories laid out in section 1.4 of the Executive Order, and (4) be information that the original classification authority determines could reasonably be expected to result in identifiable and describable damage to the national security if it is disclosed without authorization.  See Exec. Order No. 12958, as amended, § 1.1.  An original classification authority is a government official to whom such authority has been delegated by the President, Vice President, or relevant agency head.  See Id. § 6.1(cc).  Information covered by section 1.4 is that which falls into one of the following categories: (a) military plans, weapons or operations; (b) foreign government information, (c) intelligence activities, sources or methods; (d) foreign relations or foreign activities of the United States, including confidential sources; (e) scientific, technological, or economic matters relating to the national security, which includes defense against transnational terrorism; (f) U.S. government programs for safeguarding nuclear materials or facilities; (g) vulnerabilities or capabilities of systems or plans relating to the national security, including defense against transnational terrorism; and (h) weapons of mass destruction.  See Exec. Order No. 12958, as amended, § 1.4.

In the instant action all of the requirements for classification under Exec. Order No. 12958, as amended by Exec. Order No. 13292, 68 Fed. Reg. 15315, are met.  The classification authority, William H. McNair, who is an Information Review Officer for the Directorate of Operations of the CIA, made the classification decision.  According to his affidavit, he holds original classification authority at the Top Secret level.  The information contained in the memoir is information produced by and for, and is under the control of, the U.S. government and falls

within one or more of the categories laid out in section 1.4 of the Executive Order, most notably sections (c) and (d). Finally, in his classified affidavit McNair convincingly, and painstakingly, explains why each piece of classified information contained in the memoir could reasonably be expected to result in identifiable and describable damage to the national security if made public.

Finding that the information has been properly classified does not, however, end the analysis. If the information has been "officially acknowledged" its disclosure may be compelled over an agency's objections. To be "officially acknowledged" (in a FOIA context) information must meet three criteria: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; (3) the information requested must already have been made public through an official and documented disclosure. See Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990) (citation omitted).

Plaintiff has not pointed to any official documented disclosures of substantially similar information. The sources plaintiff cited to the CIA when advancing her case for publishing her memoir were all memoirs published by ex-CIA agents, none of which received official endorsement of any kind, and none of which revealed Lee's affiliation with the CIA. Further, the information in the published memoirs is neither as specific as the information in Lee's memoir, nor does it mirror the information in her memoir in any substantial way.

Finally, even if Lee were able to show a First Amendment right to publish her memoir, the valid and enforceable secrecy agreement she signed would act as a bar to the publication. Although the secrecy agreement constitutes a prior restraint on speech, such contracts are generally enforced. See Snepp v. United States, 444 U.S. 507, 509 n.3 (1980) (enforcing a

similar secrecy agreement signed upon plaintiff accepting employment at the CIA and holding that such agreements are "entirely appropriate exercise[s] of the CIA Director's statutory mandate to protect intelligence sources and methods from unauthorized disclosure.") (citations omitted). Plaintiff claims no duress in signing the secrecy agreement and she received consideration in the form of a job with the CIA. The Court finds no reason to prevent the enforcement of the agreement.

The information in Lee's memoir was properly classified, and even if it were not, it is controlled by the secrecy agreement to which Lee is a party. Lee therefore has no First Amendment right to either publish the information or make it available to her counsel. See Stillman, 319 F.3d at 548. Accordingly, the Court will grant summary judgment for defendant on Lee's first and second claims.

### IV.

Plaintiff's final claim is that the CIA's refusal to grant her request to reveal her former association with the CIA is arbitrary, capricious, and an abuse of discretion that infringes upon her First Amendment rights. This argument fails for the same reason that plaintiff's first two claims fail, namely, that there is no First Amendment right to make public classified information.

As discussed above, in June 2002, plaintiff requested that her affiliation with the CIA be declassified. The CIA considered her application and determined that her affiliation was properly classified and should remain so. To reveal her affiliation would, they said, reveal intelligence sources, methods, and personnel still active and in the field. The CIA promptly informed Lee that her request was denied.

Declassification decisions fall squarely under the CIA's discretion as granted by the National Security Act of 1947.  See 50 U.S.C. §403-3(c)(7) (2004) (the Director of the CIA shall "protect intelligence sources and methods from unauthorized disclosure").  Courts should be hesitant to intrude upon this authority.  See Dep't of the Navy v. Egan, 484 U.S. 518, 529-30 (1988) ("As to these areas of Art. II duties the courts have traditionally shown the utmost deference to Presidential responsibilities.  Thus, unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs.") (internal citations omitted).

Lee does not allege any wrongdoing in the CIA's consideration of her application for a change in her cover status– she simply disagrees with the outcome.  Further, the record shows no evidence of arbitrary, or capricious behavior in assessing Lee's cover status.  To the contrary, the CIA appears to have responded to her request quickly, and with reasoned analysis.

For the foregoing reasons, it is, this __7th___ day of July, 2004,

ORDERED, that defendant's motion for summary judgment is granted in full; and it is

FURTHER ORDERED, that this case is dismissed with prejudice.

_____/S/_____
Thomas Penfield Jackson
U.S. District Judge